of the government may call it, which perhaps it was, but rather we are asking the court to decide that a defendant has the right not to be misled by an indictment that he believes he is being tried on, only to have the indictment corrected post-trial to expand the ultimate penalty that he is facing. Every person charged with a crime must be informed of not only the charges against him, but what are the consequences if he goes to trial and he loses at trial. It makes a huge difference on whether he decides to go to trial at all. The record is clear here that Mr. Karmue and his counsel, right up until the time of sentencing, did not believe that Mr. Karmue was facing a mandatory minimum sentence based on the charge for which he was arraigned on, that being the 18 U.S.C. What about the jury? I thought the jury was instructed on Section 844N? There is probably no question of that. They were instructed. But how would a client necessarily know the meaning of that? I think you just said counsel and the client both thought they were being tried under him, and yet everyone is sitting there and N is the instruction. The reason I say the counsel is because of the filings that the counsel made, both objecting to the PSR, the motions for continuance discussing the issue, and his argument right up until the time of sentencing that the mandatory should not apply. And when, as I understand it, when your client moved to strike, the government listed 844N, it listed it in its pretrial memo, its jury instructions, there was no objection to it being included in the jury instructions, so either defense counsel clearly knew what was being tried or just repeatedly blanked out. Again, the ultimate issue is what did the client know? What was the client arraigned on and what did he know throughout trial? And that's the issue here because it's clear that at time of sentencing he still thought and he thought it was a government conspiracy that they had changed the docket on him. But all of a sudden he's facing the mandatory notice. I think you're asking us to assume that counsel never mentioned the change to his client. And on what basis do we draw that assumption? Well, first of all, the change did not occur on the docket. And this is something that I think the record really needs to reflect. I think it's page 13 of the appendix. It shows that the change, even though the government made that motion to amend, the change as issued by the magistrate only applied to the co-defendant, Mr. Coley. It did not indicate in the docket that it applied to him, to Mr. Conley. So... How does that relate, maybe I'm missing something, to the jury instruction point? It doesn't relate to the jury instruction point. The jury instruction... There's two aspects. Correct. There's whether the defendant know what counsel know. That's what we're trying to figure out. And we're trying to figure out at what point was that knowledge problematic? At the moment the jury instructions made, counsel, you'd have to agree, knows. Should have known. There's no question he should have known. I'm sorry. So then, if counsel knew, the question was on what basis would we have for believing that at the moment counsel knew. Defendant didn't know. And I think on the record you'd have to say we have no basis for assuming that counsel would not talk to his own client. Other than the statements counsel made at sentencing, where counsel indicated specifically that the client still did not understand what this meant. How about... Go back even further in time. The original government's motion... Correct. ...made absolutely clear that they were seeking to correct the M to an N for both defendants. Correct. Counsel presumably received that motion... Correct. ...and had no objection to it. Well... So how could counsel have decided not to object to it without pointing out to his client what the motion was? At that time that was Mr. Connery's first counsel before Mr. West. And at that time the magistrate issued an order as applied to the co-defendant accepting or not accepting... Before the magistrate issues any order, you open your mail, you go to ECF, and you get a motion by the government, and the motion says there's basically a typographical error, the M should be an N, and you're sitting there reading that as defense counsel. And what do you do? Well, obviously if you're a defense counsel who is being effective, would go to his client. Either that or either agree, and I'm surprised there wasn't an assent in the record to the amendment, which would then order another rearrangement so that the client, again, what we're concerned with... When we have such a record that makes it clear counsel must have known, and then the record is silent completely as to whether counsel had a discussion with his client about that, what inference are we... I think your argument necessarily assumes that we need to draw an inference that in the absence of proof that the lawyer spoke with the client, we need to infer that he did not. Well, only based on what occurred at sentencing, as well as the objections the client made concerning counsel before sentencing. And in that, one of the issues was based on not being aware that he was facing the mandatory minimum sentence. Can we glean from the sentencing record why defendant didn't know? Is it because counsel didn't communicate to him? Or it was because defendant was refusing to listen to being informed? Well, actually, if you look at the motions that counsel made in reference to continue, the motions to continue so that he could look into the issue, I'm not sure counsel even understood the implications of what that amendment did. Because he was still arguing that point in his objections to the PSR. And if he didn't understand it, he wasn't explaining it to his client. So aren't you suggesting that there may be a Strickland error here for a subsequent habeas inquiry? As I said, that's an issue for another day. But I think on the record... Isn't that the point? We can't... Your argument seems to hinge on us finding a Strickland error. Well, actually, I don't think we need to go that far at this point. What I'm concerned with is that here is a change in the indictment that even though it's just an N to an M, it's a material change that increases and enhances the alternate penalty. And here the magistrate issued the ruling within 8 days, not 14 days, so there wasn't even a time to object. The magistrate issued the ruling and issued the ruling only as to the code of it. So it wasn't so obvious that you could then object or the client would then know what he was facing. Just to isolate the point, suppose that sentencing, the record was just as silent as to defendant's knowledge as it was prior to sentencing. Okay. In that instance, are you saying that we're supposed to presume the defendant didn't know even though counsel knew? One of the purposes of arraignment is that someone... Just help me with this point. If the record is silent all the way through, we know counsel knows, we don't know if defendant knows. Correct. Everything else in the record has happened just as it happened here. Are we supposed to assume counsel did not speak to defendant? Only based on, I think, just looking at, what was indicated at time of sentence... Okay, wait a minute. I think that's a no. I think you're saying no. Yes. Okay. So then the question is, okay, now what happened at sentencing that would lead us to have a different conclusion? And what I think you're saying is maybe counsel didn't understand, maybe defendant didn't listen to counsel, we don't really know exactly what happened. So I guess I'm just wondering at that point, it may be that there was a strickling problem, but in the absence of a strickling problem, what is in the record that would lead us to conclude that defendant didn't know from counsel? Well, the only thing that's additional that's in the record is the fact that the trial judge issued a no prompt tongue order changing the amendment, because the trial judge saw it as an issue. And so he issued a no prompt tongue order and then sentenced the defendant accordingly. So that's the only additional point that I could see from what occurred at sentence. Thank you very much. Good morning. Donald Lockhart for the government. So there was a latent ineffective assistance claim here, and really it's directed at the first of the two attorneys. If you look in the record, the first attorney represented the defendant for the first six months of the case. During the period of time immediately post indictment when the government moved to correct the statutory citation. If you look on page 13 of the appendix, you see docket 49, which is our motion to amend, correct the indictment. It's filed in the case of both defendants for the obvious reason that we're seeking to change the citation in a conspiracy count, which applies to both of them. So there's no doubt that that's what we're seeking to do. If you look a little further down, you see the text order from the magistrate judge granting that motion. And although the text order only refers to Colley, the co-defendant, it's quite obvious that that itself is a typographical error. The key point here is that our motion and the text order would have been docketed on ECF, would have gone to counsel, and as Judge Kayada said, what does the defense attorney then do in that situation? It seems to us there are really three options. Door number one is you file something with the magistrate judge and you say, you know, you didn't give us the full two weeks to object. We were really planning to object. Can you reverse your order and give us more time? Door number two is to say, can you reconsider your ruling substantively because we think it's incorrect? And then the third door to go down is just appeal to the district court from the magistrate judge's ruling. Now, none of those three options were pursued by the original defense attorney, Mr. Edward Pepe, and it seems like in addition to the latent claim that he should have done something more, there's also a claim that he didn't inform the client of the motion or of the ruling correcting the indictment. Now, query whether a defense attorney even has an obligation to tell the client about what seems to be a ministerial change in the indictment which is prompting a Rule 7 motion which is clearly going to be granted. I mean, there is no substantive basis at all for denying our motion and query whether a defense attorney in that circumstance has to consult with the client about a technical legal issue like that. One that changes the potential sentence? Well, there's a separate question about whether a defense attorney should inform the client of the sentence that he's facing. That's really almost a separate issue from the issue of, well, should the government be permitted to make this change to the indictment? It's one thing to say that, you know, an attorney ought to inform the client of the statutory minimum, a year or five years. It's another thing to say the attorney has to consult about the technical Rule 7c aspect of the motion. Now, the record here is silent, obviously, on what Mr. Pepe did or didn't say to the defendant about the motion or about the statutory minimum. But what is clear is that after the ruling granting the motion to correct the indictment, we filed three separate district court filings that all referenced the conspiracy, the correct conspiracy charge, 844-N as opposed to M, Mary. The original indictment even referred to the conspiracy to violate Section 844-I. That was correct. The 844-I is correct. Everyone agrees that the language, the body of the count, properly tracked the language of both 844-N, Nancy, and 844-I. The only glitch here is that we have an M instead of an N. Otherwise, the indictment... Is this something that I wanted to ask you? We're talking about count one, correct? Yes, the conspiracy count. Would the body of the... Would the language of that count be different had it been N instead of M? It would have had to have been very different because subsection M, that conspiracy provision, only applies to conspiracies to commit the substantive crime of 844-H, which is not a substantive crime that we charged at all. And 844-H is a totally different offense. It's using fire or explosives in the course of committing a felony, whereas 844-I, the underlying offense that we have here, is more of a classic arson offense, arson affecting a property that's in interstate commerce. So you have two very different underlying substantive offenses. We clearly charged a conspiracy to commit the correct offense, 844-I. And so even the original indictment put the parties on notice that this was an 844-I conspiracy, not an 844-H conspiracy. But as I mentioned, we then filed several, three at least, pretrial filings, which all referred correctly to 844-N and I. The very attachment to the indictment, the original indictment correctly lists 844-M and I. And then the defense itself filed a motion in limine prior to trial about a month before trial. The defense attorney himself used 844-N and 844-I correctly. And then, of course, the judge ultimately instructed on those two offenses without objection at the time. In normal course, absent a guilty plea, does a court routinely get assurance directly from the defendant that the defendant knows the potential penalty? Yeah, it's hit or miss, I think, in the District of Rhode Island for the most part. But under the rules, I don't think there's a procedural requirement that the judge in every case gets that assurance directly from the defendant. Well, so at the... I've forgotten exactly what the rules say on that point. All I know is that typically at the arraignment, you will see sometimes a discussion of the penalties, sometimes not. Sometimes the maximums are covered, sometimes the minimums aren't covered. If there were a requirement that the judge satisfy him or herself that the defendant personally, as you would at a guilty plea proceeding, understands the maximum, then wouldn't we have a problem here? Because when you do change the count, then you don't ever get that assurance from the defendant directly. No, we wouldn't have a problem. First of all, obviously, the claim isn't even being pressed on appeal. That's not one of the claims before you. So that's issue number one. Second, were it to be pressed, it would be a plain error review situation. We'd be dealing with a record that's silent. Even assuming, for the sake of argument, an error and a plain error, you'd have the problem of prongs three and four because the record would be silent on whether counsel had informed the defendant of the minimum. So even a situation where it's clear that there's some judicial obligation to inform the defendant of a minimum, there just simply wouldn't be prejudice if it were the case that the defendant learned of that same information from another source. Can that be true given what was being said about what the sentencing record shows, about defendant actually not well aware? Yeah, the sentencing record on that score is ambiguous. You have two different people talking. You have the second defense attorney who I think charitably read what he's saying is, look, I discovered that initially I thought there was an issue of whether the magistrate judge had granted the governance rule seven motion. I thought that there had been no action on that motion. Now I see actually that there was. He's not saying I didn't know about 844M versus M and 844I. What he's saying is I thought I might have a technical argument that I could make so that this defendant could avoid the five-year mandatory minimum. That's, I think, what he's saying. He's not saying I myself was in the dark throughout the whole proceedings. He's trying to say I thought I might have been able to say that, aha, gotcha, the motion was never granted to correct the indictment, ergo. Is there anything in the sentencing record beyond that that bears on the knowledge of the defendant? Well, you have two things in the record on the defendant. One is if you look at, let me see, the page number in the record is, just a second. Well, it's in the appendix. Oh, just a second. If you look at page 529, I think 530, there is a pro se filing by the defendant where he complains about the statutory change. And the thrust of it seems to be that he didn't know about it. That's his story in the motion. And then at the sentencing itself, the judge does address him on the issue of whether he wants to proceed pro se or continue with the second attorney. And in that context, I think there might have been some further discussion by him of the statutory issue. So there's nothing definitive from him. Even if it's not, let's say, definitive, if it's, I don't know, 51% or something. I don't know how you quantify it. But I guess I'm trying to figure out. It's one thing to presume defendant knew on a silent record. But if the record were to show, I don't know how much it would have to show it, that defendant, in fact, didn't know, what does that do to the government's case? Nothing at all. And why is that? Well, look at the citation to Vega Molina. We cite that case in the brief. It's a case where the court allowed a correction to a statutory citation of the indictment after the government's case-in-chief. And the new statutory citation actually did bump up the statutory penalty. And so the defendant complained on appeal that there was a problem with that, in part because until the very close of the government's case-in-chief, he claimed he didn't know about this different statutory provision with a higher penalty. And what the court said in Vega Molina is that while that issue might have mattered if the defendant had pled guilty on the understanding that the statutory penalties were other than they were, that complaint was quote, unquote, meaningless because he had gone to trial. So even if you thread your way past the gaps in the record, you confront a very basic legal question, which is, is there some constitutional right to know the statutory penalties in a situation where it's not a guilty plea, but you're actually going to trial? Wouldn't that affect whether you would plea? It might. But again, this is a very sort of grist for an ineffective assistance claim. And that would be part of a prejudice inquiry on that claim. The defendant would say, well, gee, neither the court nor my counsel informed me of the penalty here. And had I known it, I would have certainly pled guilty. Now, a query, we just don't know what conversations were had on that front. And we just don't know whether the defendant would have elected to plead guilty in that circumstance. Remember, he got a sentence significantly above. It's just in the context of the plain error discussion you're having. Outside of Strickland, you were saying he wouldn't be able to show prejudice. Correct. But if you're saying that this would be a relevant prejudice inquiry under Strickland, I don't see why it wouldn't be a relevant prejudice inquiry under the plain error issue that we were just discussing. It might be, except you face the gaps in the record that foreclose you from making a definitive judgment on prejudice. Speaking of gaps in the record, I have a housekeeping question. We have two versions of the docket sheet here. Really? In the appendix? Well, as I understand it, the court went back and did it correct the docket sheet regarding the motion to amend and then the entry on that? Oh, well, I think what you're referring to is that page 13 of the appendix has the original motion and the magistrate judge test order granting the motion. Yes. Then when the second attorney, in preparation for sentencing, was questioning whether there had actually been a ruling on our motion, the district court judge issued a text order, which comes later, granting the motion, apparently as sort of a prophylactic measure, I guess. But that later ruling really doesn't affect the analysis because, as the district court itself later recognized at the sentencing proceeding, the magistrate judge originally granted that motion. So there was really no need for the district court judge to sort of re-grant it later on after trial in the lead up before sentencing. So I don't know that there are two docket sheets. It's just that there's that later text entry from the district court granting or really accurately re-granting the motion. Thank you. Yes, thank you.